# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Todd E., *Plaintiff*, v. Frank J. Bisignano, Commissioner of Social Security, *Defendant*. | Case No. 3:25-cv-50008 <br><br> Honorable Michael F. Iasparro |

## MEMORANDUM OPINION AND ORDER

Plaintiff Todd E. brings this action under 42 U.S.C. § 405(g) seeking reversal of the decision denying his continued entitlement to disability insurance benefits on reconsideration.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

As of March 30, 2012, the Commissioner found Plaintiff disabled due to epilepsy and anxiety disorder. R. 133. As part of its ongoing evaluation of disability benefits, the Commissioner completed a comparison point decision on November 9, 2016, and found that Plaintiff's disability was continuing. R. 106. After receiving a fraud hotline allegation against Plaintiff, the Commissioner again evaluated Plaintiff's entitlement to disability benefits and determined that Plaintiff was no longer disabled as of December 1, 2020. R. 108, 132.

Following a remand from the Appeals Council, an administrative law judge ("ALJ") conducted a hearing and subsequently issued a partially unfavorable decision confirming that Plaintiff was not disabled for the period between December 1, 2020, and September 15, 2022. R. 28. The ALJ determined that during this period in which Plaintiff was not disabled, he had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> could not climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could frequently balance, stoop, kneel, crouch, and crawl; could have no exposure to unprotected heights, moving mechanical parts, open flames, or open pools, and could not work with sharp instruments; needed to avoid concentrated exposure to vibration; could have moderate exposure to noise; needed to avoid concentrated exposure to dust, fumes, gases, and poor ventilation; could not perform commercial driving.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 7.

R. 24. The ALJ determined that Plaintiff had no past relevant work, but that there were other jobs that existed in significant numbers in the national economy that he could perform during this period. R. 27. The ALJ went on to decide that, as of September 16, 2022, Plaintiff was again entitled to disability benefits. R. 30.

The Appeals Council denied Plaintiff's request for review on November 4, 2024, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision on three grounds: (1) the ALJ did not meet his burden of establishing that a significant number of jobs exist that Plaintiff can perform; (2) the ALJ improperly dismissed the consultative examiner's report without seeking further clarification; and (3) the ALJ's RFC determination was not supported by substantial evidence. Dkt. 10. As explained in further detail below, the Court does not find that any of these alleged errors warrant remand.

1) Significant number of jobs

At step five of the sequential analysis used to determine disability, "[t]he Commissioner is 'responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy'" that the claimant can perform. *Milhem v. Kijakazi*, 52 F.4th 688, 694 (7th Cir. 2022) (quoting 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2)). However, the Social Security Administration "does not tally the number of job openings at a given time." *Chavez v.*

*Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018). Therefore, "ALJs often rely heavily on two sources of occupational information to determine whether the government has met its burden: the *DOT* and Vocational Experts." *Milhem*, 52 F.4th at 694 (quoting *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011)). The Dictionary of Occupational Titles ("DOT") categorizes jobs but "without also reporting an estimate of how many of those positions exist." *Chavez*, 895 F.3d at 966. ALJs then often turn to a vocational expert ("VE") to "supplement the information provided in the *DOT* by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Milhem*, 52 F.4th at 694 (quoting *Weatherbee*, 649 F.3d at 569).

Here, the ALJ heard from a VE who testified that someone with Plaintiff's limitations could perform three jobs at the medium exertional level: a packer with 75,000 jobs, a bagger with 75,000 jobs, and a sandwich maker with 20,000 jobs. R. 64. The VE confirmed that her testimony was consistent with the DOT and, when questioned about some of the limitations that are not described in the DOT, explained that "the rest is based on [her] training, experience and education." R. 65. When given the opportunity to cross-examine the VE, Plaintiff's counsel did not object to the VE's methodology or findings. R. 65-68. Nor did Plaintiff object to the VE's testimony in the post-hearing brief to the Appeals Council. R. 641-42.

Now, Plaintiff alleges that the jobs provided by the VE "exceed the limitations that the ALJ found in the RFC assessment." Dkt. 10, at 5. "Because [Plaintiff] did not identify any apparent conflicts at the time of the hearing, he now must demonstrate 'that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance.'" *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (quoting *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)). Plaintiff alleges that each of the three jobs provided by the VE have such obvious conflicts. Dkt. 10, at 5-7.

The ALJ found that Plaintiff "could have no exposure to . . . moving mechanical parts." R. 24. The VE testified that someone with Plaintiff's limitations could work as a bagger which the DOT describes as requiring "pushing carts to customers' vehicles," "placing groceries into customers' vehicles," and "collecting shopping carts from parking lot and surrounding areas and returning carts to store." *DOT*, 920.687-014 Bagger (4th ed. 1991), 1991 WL 687964 (citation modified). Plaintiff alleges that this shows an obvious conflict as these tasks "require[] exposure to parking lots" which "necessarily entails exposure to dozens if not hundreds of cars, all of which have thousands of moving mechanical parts." Dkt. 10, at 7. However, "the DOT expressly states that moving mechanical parts are not present for the bagger job . . . and [Plaintiff's] speculation to the contrary is insufficient to create a conflict between the VE's testimony and the DOT where there is none." *Canady v. O'Malley*, No. 5:23-cv-318-RJ, 2024 WL 2817542, at *4 (E.D.N.C. June 3, 2024) (citation omitted); *see also Amanda L. S. v. Kijakazi*, No. 21 C 5775, 2023 WL 2711663, at *7 (N.D. Ill. Mar. 30, 2023) (collecting cases). "On its face, and in the absence of an objection by [Plaintiff, the VE's] testimony [about the bagger position] met the substantial evidence standard." *Schmitz v. Colvin*, 124 F.4th 1029, 1034 (7th Cir. 2024).

That leaves only Plaintiff's challenges to the packer and sandwich maker positions. The ALJ found that Plaintiff "could have moderate exposure to noise." R. 24. Despite this restriction, the VE testified that someone with Plaintiff's limitations could work as a packer which the DOT describes as involving exposure to loud noise. *DOT*, 920.587-018 Packager, Hand (4th ed. 1991),

3

1991 WL 687916. The ALJ also found that Plaintiff "could not work with sharp instruments." R. 24. Yet, the VE testified that someone with Plaintiff's limitations could work as a sandwich maker which the DOT describes as requiring "slicing cold meats and cheese," "cutting bread," and "buttering bread slices, *using knife*." *DOT*, 317.664-010 Sandwich Maker (4th ed. 1991), 1991 WL 672749 (citation modified). It is hard to imagine how any of these tasks would be done without the use of a sharp instrument. Thus, "there is an apparent unresolved conflict between VE [] evidence and the DOT" in reference to the packer and sandwich maker positions, and the ALJ was required to "elicit a reasonable explanation for the conflict." *SSR 00-4p: Use of VE Evidence, and Other Occupational Information*, 65 Fed. Reg. 75759-01 (effective Dec. 4, 2000).

The Commissioner argues that these apparent conflicts were resolved by the VE's affirmation that her testimony was consistent with the DOT and based on her training, experience, and education when her testimony went beyond the information provided in the DOT. Dkt. 14, at 9 (citing R. 65). The Court is somewhat wary of this argument as the Seventh Circuit has suggested that the ALJ cannot accept the VE's personal experience as a reasonable explanation for apparent conflicts when "the record does not indicate that her knowledge on the topic exceeds that of the DOT authors, or that her opinion is informed by another reliable publication." *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016). Nonetheless, the Court will leave this issue for another day because, as explained above, the ALJ was entitled to rely on the VE's testimony about the bagger position and that position totaled 75,000 jobs. As that is a significant number on its own, any error in the ALJ finding Plaintiff capable of performing the packer or sandwich maker positions was harmless. *See Cain v. Bisignano*, 148 F.4th 490, 495, 500 (7th Cir. 2025) (confirming an ALJ's reliance on a VE's testimony that plaintiff could perform 59,000 jobs that exist in the national economy); *Milhem*, 52 F.4th at 697 (collecting cases).

2) Consultative examiner

Plaintiff then argues that the ALJ erred by failing to re-contact Dr. Heinrichs, the consultative examiner, and inadequately articulating his reasons for determining that Dr. Heinrichs' report was unsupported. The Court is not persuaded.

The ALJ afforded Dr. Heinrichs' assessed limitations "some weight" because they were "not fully supported by the examiner's explanation," vague, and "not consistent with other records." R. 26. Plaintiff argues that the ALJ should have sought clarification from Dr. Heinrichs if he believed the report was vague. Dkt. 10, at 9. The Social Security Regulations provide that "[i]f the report is inadequate or incomplete, [the Commissioner] will contact the medical source who performed the consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). However, Plaintiff's reliance on this mandate is misplaced.

A consultative examination report is "complete" if it includes the claimant's chief complaints, a detailed history of those complaints, a description of pertinent findings, the results of objective tests relating to the requirements of listed impairments, the diagnosis and prognosis of the claimant's impairments, and some explanation or comment from the examiner. 20 C.F.R. § 404.1519n(c). A report must also "provide[] evidence which serves as an adequate basis for decisionmaking in terms of the impairment it assesses." *Id.* § 404.1519p(a)(1). A consultative

4

examiner is *not* required to provide a function-by-function assessment of a claimant's abilities. In fact, the Regulations make it explicitly clear that "the absence of a medical opinion[2] in a consultative examination report will not make the report incomplete." *Id.* § 404.1519n(c)(6). Here, the only insufficiency that Plaintiff alleges the ALJ should have developed comes from the vagueness of the superfluous information provided in Dr. Heinrichs' assessment of Plaintiff's limitations, not from any insufficiency of the required information or vagueness of Dr. Heinrichs' opinion in its entirety. Thus, Dr. Heinrichs' report was not inadequate or incomplete and the ALJ's responsibility to recontact Dr. Heinrichs was not triggered.

Looking at this regulation in the broader context of the ALJ's "duty to develop a full and fair record" further supports this conclusion. *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (quoting *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)). To satisfy this duty, ALJs will sometimes recontact medical sources for further clarification but are only required to do so "to flesh out an opinion for which the medical support is not readily discernable" or where "the record contained [in]adequate information for the ALJ to render a decision." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009); *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018). Neither situation is found here.

The ALJ "readily discerned" that Dr. Heinrichs' report was based on Plaintiff's performance at the consultative examination which showed "limitations in short-term memory, auditory memory, attention, and concentration" as well as "difficulty with expressive speech." R. 26. However, the ALJ found that the record as a whole "failed to support [Dr. Heinrichs'] conclusions, a finding the regulations entitled [him] to make." *Simila*, 573 F.3d at 517. Specifically, the ALJ pointed to the inconsistencies between Dr. Heinrichs' report and Plaintiff's treating neurologist's observations of normal memory and attention as well as the internal medicine consultant's finding that Plaintiff's speech "was 100 percent understandable." R. 21. Ultimately, Dr. Heinrichs' "vague" limitations did not create "a gap in the medical evidence" that the ALJ needed to fill by recontacting Dr. Heinrichs. *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007).

Plaintiff also argues that the ALJ did not provide a legally sufficient explanation for affording Dr. Heinrichs' report only some weight. Dkt. 10, at 10. As with any other medical opinion, the ALJ was required to assess the persuasiveness of Dr. Heinrichs' report, specifically explaining his consideration of the supportability and consistency of the report. Plaintiff challenges the sufficiency of the ALJ's consideration of the supportability factor[3] which "looks at the extent the relevant and objective medical evidence supports the medical opinion." *Cain*, 148 F.4th at 497 (citing 20 C.F.R § 416.920c(c)(1)).

When specifically discussing the supportability of Dr. Heinrichs' opinion, the ALJ explained that the assessed limitations were "not fully supported by the examiner's explanation."

---

[2] A medical opinion is defined as "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2).

[3] Plaintiff challenges the ALJ's consideration of the consistency factor as well, but this argument is without merit, was not developed, and was not raised until Plaintiff's reply. *See Bradley v. Vill. of Univ. Park, Ill.*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellant may waive a[n] . . . argument . . . by failing to raise it at all in the party's opening brief on appeal, [or] by failing to present a developed argument . . . .").

R. 26. The ALJ also recognized that Dr. Heinrichs found Plaintiff to have "normal orientation, normal mood, and normal affect" and "noted that [Plaintiff's] levels of understanding and persistence were normal."[4] R. 18, 26. This, along with the ALJ's consideration of the consistency factor, is "substantial evidence support[ing] the ALJ's decision to" discount Dr. Heinrichs' opinion. *Warnell*, 97 F.4th at 1053; *see also Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (holding that an ALJ's medical opinion evaluation must be allowed "to stand so long as the [ALJ] minimally articulated his reasons—a very deferential standard"). Thus, the ALJ "was within his discretion for giving [Dr. Heinrichs' opinion] the weight he did." *Crowell*, 72 F.4th at 816.

    3) Period of non-disability

Plaintiff also alleges that the ALJ failed to provide a logical explanation for his conclusion that Plaintiff, after eight years of disability, was not disabled as of December 1, 2020, but then was disabled again as of September 16, 2022. Dkt. 10, at 12. As described above, Plaintiff was originally found to be disabled because his impairments met the medical requirements of the listing for epilepsy, confirmed most recently in November 2016. R. 106. Now, the ALJ found that Plaintiff's impairments no longer met or medically equaled any listing and thus saw medical improvement. R. 19-23. The ALJ then continued through the remaining steps of the sequential analysis and found that Plaintiff was no longer disabled for the period of December 1, 2020, through September 15, 2022 ("the period of non-disability"). R. 24.

In support of this conclusion, the ALJ relied primarily on the decreased frequency of Plaintiff's seizures. R. 23. The ALJ noted that at the time of the most recent decision confirming Plaintiff's disability, the record included evidence of a week-long hospitalization in 2015 and reports of one or two seizures per week. R. 22. Then, during the period of non-disability, the record provided little "supporting medical documentation" for Plaintiff's reported seizures. R. 20. Plaintiff himself reported that he had grand mal seizures only once every few months, which was supported by several third-party reports. R. 23. The ALJ recognized this "clear reduction in seizure frequency" and concluded that Plaintiff had experienced medical improvement to such an extent that he was no longer disabled. *Id.*

Plaintiff does little to challenge this finding of medical improvement.[5] Instead, Plaintiff argues that the ALJ should have relied on the later evidence to find that Plaintiff had the same restrictions during the period of non-disability as the ALJ found Plaintiff to have during the later period of disability. Dkt. 10, at 13-14. While true that retrospective evidence may be relied on to assess past impairments, such later evidence is not probative where "evidence indicates that [the claimant's] symptoms have worsened." *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012). Here, the ALJ saw exactly that—a worsening of Plaintiff's seizure disorder as evidenced by

---

[4] Although this was not specifically found in the ALJ's discussion of the supportability of Dr. Heinrichs' report, the Seventh Circuit has repeatedly confirmed that "to require the ALJ to repeat such a discussion throughout the decision would be redundant." *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (quoting *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020)).

[5] Plaintiff briefly suggests that the ALJ played doctor in making this determination, but this conclusion was based on the findings of the state agency consultants and Plaintiff's own reports of decreased seizure frequency which certainly do not require any medical expertise to evaluate. *See Mandrell*, 25 F.4th at 518 (explaining that an ALJ plays doctor when he "stray[s] beyond his expertise as an adjudicator").

multiple hospitalizations. R. 30. The record shows that many of Plaintiff's other symptoms also worsened during this time. Beginning in September 2022, Plaintiff began reporting more frequent tremors, "more falls than usual," and increased leg swelling. R. 1120, 1419, 1951. Most notably, Plaintiff and his wife explain that Plaintiff's symptoms improved since he was originally found to be disabled before worsening again after 2020. R. 56, 82, 90. Plaintiff now argues that the September 2022 EEG specifically should have been considered in the ALJ's assessment of the period of non-disability but even the records referring Plaintiff to the EEG noted that Plaintiff's "symptoms have increased." R. 1744. Thus, the ALJ was entitled to conclude that this later evidence did not relate back to the period of non-disability.

To challenge this conclusion, Plaintiff asserts that "epilepsy and traumatic brain injuries are typically lifelong impairments." Dkt. 10, at 12. Even assuming the accuracy of that statement, which Plaintiff provides no support for, it does not show any error in the ALJ's conclusions. The fact that Plaintiff will have epilepsy and a traumatic brain injury for the rest of his life (which the ALJ did not deny as he found both to be severe impairments) does not establish that those impairments will disable him throughout his life. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities."). If Plaintiff means to suggest that the symptoms of these impairments do not typically fluctuate, this argument is similarly unavailing, as Plaintiff failed to establish that such a "typical" lack of fluctuation is true of him personally. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (denying the argument that known symptoms of an impairment are *ipso facto* evidence of a claimant with that impairment experiencing those symptoms).

Plaintiff then argues that Dr. Heinrichs' evaluation "demonstrated the same abnormalities" that the ALJ later relied on to show disabling limitations, necessitating that the ALJ reach the same conclusion for both periods. Dkt. 10, at 14. The ALJ found that more restrictive limitations were warranted during the later period of disability because, in addition to the worsening of Plaintiff's seizure disorder, Plaintiff's medical providers noted that he felt "wobbly" and had "halting speech." R. 30. Plaintiff is correct that problems with speech were documented during the period of non-disability as well. However, the ALJ addressed Plaintiff's earlier issues with speech and simply found that evidence unpersuasive. R. 21. The ALJ's decision to credit these later reports of issues with speech reported by other medical providers and accompanied by reports of other worsening symptoms, does not invalidate the ALJ's earlier decision not to do so. Plaintiff's argument to the contrary is nothing more than an invitation to reweigh the evidence, which is not this Court's role. *See Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal and remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: February 6, 2026  By: _____
Michael F. Iasparro
United States Magistrate Judge